[No. 6,122.]

## MARSTON ET AL. *v.* SIMPSON ET AL.

RESCISSION OF CONTRACT—FRAUD. — It is the duty of a party desiring to rescind a contract for fraud, to do so promptly, upon a discovery of the facts entitling him to rescind; but *held*, in this case, that a delay of a little less than six months was not such laches as to deprive him of the right. ·

ID. — ID. — For certain purposes the law will presume a person to have notice of facts in respect to which he has been put upon inquiry; but when a party is defrauded by another, between whom and himself special relations of trust and confidence exist, information as to the fraud by others will not constitute notice, if the party defrauded is in fact prevented from crediting such information, by the representations of the other party.

APPEAL from a judgment for the plaintiffs, and from an order denying a new trial, in the Third District Court,. County of Alameda.  McKEE, J.

The facts are stated in the opinion.

*C. A. Tuttle*, for Appellants.

The delay on the part of the plaintiffs in attempting to rescind is fatal to the action.  (Civ. Code, § 1691; *McNevin* v. *Livingston*, 17 Johns. 436; *Fratt* v. *Fiske & Loring*, 17 Cal. 380; *Gifford* v. *Carvill*, 29 Id. 589; *Miller* v. *Steen*, 30 Id. 407; *Masson* v. *Boret*, 1 Denio, 69; *Selway* v. *Fogg*, 5 Mees. & W. 83; *Flynn* v. *Williams*, 7 Ired. 32; *Veazie* v. *Williams*, 3 Story, 612; 2 Parsons on Cont. 4th ed. 278-9.)

If we look at the facts proved, we will find that the delay in giving notice was greater than that stated in the findings. Marston says in his testimony, that he was informed, soon after the transaction, that the stock was worthless.  If there is any case in which a party, who claims to have been defrauded, should promptly rescind, it is a case of the sale of mining stock. No property fluctuates in price so much.

*J. P. Phelan*, for Respondents.

The plaintiffs were entitled to rely upon the positive statements of the defendant Gregory, as to the · value of the stock and mine.  Having made these statements for the purpose of

inducing the plaintiffs to accept his proposition, he will not be permitted to say, that the plaintiffs should not have trusted him, but should have sought other sources of information. The offer to restore the stock, and proposition to rescind, were made in a reasonable time; no injury resulted to defendants from the delay.

Department No. 1, McKinstry, P. J.:

The plaintiffs, having tendered a return of the three hundred and fifty shares of the stock of a mining corporation, which constituted the consideration for the sale of the lands, prayed for a decree rescinding the agreement for sale and purchase, and that defendants be compelled to reconvey the legal title.

It is urged by appellants, that plaintiffs did not tender a return of the stock, or give notice of their intention to rescind the agreement, within a reasonable time after they discovered that a fraud had been practiced upon them.

It was, doubtless, the duty of plaintiffs to rescind promptly, "upon discovering the facts" which entitled them to rescind. (Civ. Code, § 1691.)

The Court below found that on the 6th day of June, 1876, the plaintiffs caused to be served on defendants a notice in writing, to the effect that they proposed to rescind said sale and conveyance, on the ground of fraud, and tendered to said defendants the shares of stock, etc.

. The Court also found that the plaintiffs had no knowledge of the market and selling value of the stock, until within six months prior to the commencement of this action, which was begun on the 7th of June, 1876. The fraud complained of consisted of misrepresentations by the agent of defendants, to the effect that the stock was of the value of $10 per share, when, in truth, as alleged, it was worthless. The finding that plaintiffs had no knowledge of the value, implies and includes a finding that they had no knowledge that the representations of defendants' agent were false; and we cannot say, as matter of law, that a delay to offer to rescind for a period of a little less than six months was such *laches* as must deprive the plaintiffs of their right to relief.

It is said, however, that the finding that plaintiffs had no knowledge of the value until within six months is not sustained by the evidence.

Appellants' counsel has arrayed in his brief, in consecutive order, the statements of witnesses which tend to show that plaintiffs did in fact have knowledge of the real value, and that the representations of the agent were false, at an earlier date than was found by the Court below.

" The plaintiff Marston says, in his testimony, 'I never ascertained this stock had any value, or anybody else. I *soon* found that no one had ever asked more than five dollars per share, and that is all I know about it. After I became the owner of the stock it was very natural, and I did, after some reasonable time make inquiries to see what the stock was worth, but I could not find anybody who said the stock was worth anything; made inquiries there in the office from such men as I saw that knew something about it; think I talked with the Hardys about it; that might have been a week after the sale.   *   *   *   A good many people said things to me which created a distrust in my mind. It was what everybody said, if they said anything. Murray told me as soon as I got it, "you are *sold*." He said, "I have been all through that country, and I would not give you four bits for your ten dollars a share." This was the very next day after I got the stock.' Plaintiff's son says he ascertained the stock had no value about a week after the trade, and told his father."

It is undoubtedly true, that for certain purposes the law will presume a person to have notice of facts in respect of which he has been put upon inquiry.

But where, as in this case, there are special reasons why one party should, and, as a reasonable man, might, place trust and confidence in another, the law will not impose on him the necessity of absolutely ignoring the persistent asseverations of his " friend and neighbor." (Finding 2.) In other words, in determining whether the plaintiff Jotham Marston was guilty of neglect in not sooner ascertaining that the stock was of no value, the Court below properly considered the representations themselves, coming as they did from one to whom he had a right to

give his confidence, and required that the evidence to overcome the reliance he placed on the statements of his friend and neighbor, should be greater than such as would excite suspicion in one who had been dealing with a stranger. The Court found as a fact, that, until the period mentioned, the plaintiffs continued to rely upon the statements of Gregory, and to believe them true. We cannot say that Jotham Marston ought not to have relied upon Gregory's statements up to the date when he ceased to regard them trustworthy, nor that he was bound to reject them as false before the accumulated evidence was such as brought home to his mind the conviction of their falsity, notwithstanding his struggle to retain his faith in one with respect to whom he had occupied such familiar relations.

Judgment and order affirmed.

Ross, J., and McKee, J., concurred.