| 91 | 565 |
| 113 | 487 |
| 91 | 565 |
| 124 | 530 |
| 124 | 545 |
| 91 | 565 |
| 131 | 80 |
| 91 | 565 |
| 138 | 541 |
| 91 | 565 |
| 140 | 358 |

[No. 13975. Department One. — October 30, 1891.]

# C. E. LATAILLADE, APPELLANT, v. GASPAR OREÑA, RESPONDENT.

GUARDIAN AND WARD — JURISDICTION OF PROBATE COURT — SETTLEMENT OF ACCOUNTS — CONCLUSIVENESS OF DECREE — FRAUDULENT CONCEALMENT OF PROPERTY — RELIEF IN EQUITY. — Although as a general rule the probate court has exclusive jurisdiction to compel a guardian, executor, or administrator to account, and its decree settling the accounts of a guardian and discharging him from his trust is final and conclusive, yet this rule has no application where the guardian intentionally and fraudulently concealed property from the court and from his ward, to which the ward was entitled, and the settlement of his accounts cannot shield the guardian from being afterwards called upon in a court of equity to account for the property so concealed.

ID. — ACCOUNTING — PLEADING — SALES OF REAL AND PERSONAL PROPERTY — TRUST FUND — SINGLE CAUSE OF ACTION. — A complaint by a ward seeking an accounting in equity against his former guardian as to moneys received by the latter from the proceeds of sales of land and cattle in which the ward had an interest, which interest was concealed from him by the guardian and not included in the final settlement of his accounts, states but one cause of action for the recovery of moneys in part held in trust for the plaintiff, which constituted a single fund, though derived from sales of real and personal property, and received at different times.

ID. — RELIEF ON GROUND OF FRAUD — STATUTE OF LIMITATIONS. — Although the action is for an accounting, yet where the grievance complained of is, that defendant knowingly received moneys in trust for plaintiff, and ap-

propriated the same to his own use, and at all times fraudulently con-
cealed from plaintiff the fact that he had received such moneys, or any
money in which plaintiff had an interest, the case is one for relief on the
ground of fraud within the meaning of the statute of limitations, and the
cause of action does not accrue until discovery of the facts constituting
the fraud.

Id. — PLEADING — DISCOVERY OF FRAUD — DILIGENCE — PRESUMPTIONS —
CONFIDENTIAL RELATIONS. — A party seeking to avoid the bar of the
statute on account of undiscovered fraud must show that he used due
diligence to detect it, and should state when any particular discovery
was made, what it was, and why it was not made sooner, and will be
presumed to have known what with reasonable diligence he might have
ascertained concerning the fraud of which he complains; but where the
complaint states facts showing that the relations of the parties are such
as would naturally inspire trust and confidence on the part of the plaintiff
in the defendant, and that he relied upon the defendant's representations,
without knowledge or reason to suspect that a fraud was being prac-
ticed upon him, and nothing appears to have put him on inquiry, he can-
not be presumed to have known anything concerning it prior to the
actual discovery of the fraud.

Id. — ULTIMATE FACTS — CONCLUSIONS OF LAW — CONTENTS OF PLEADING.
— The pleading alleging the discovery of the fraud should state the ulti-
mate facts, and not the probative facts or conclusions of law. But what
are ultimate facts and what conclusions of law are often mixed and
uncertain questions, and the same averment may be of a fact or of a con-
clusion of law, according to the context. Averments complained of as
conclusions of law may appear from the context to be sufficient as state-
ments of fact.

Id. — SUFFICIENT AVERMENTS AS TO DISCOVERY. — A complaint setting forth
facts showing confidential relations between the plaintiff and the defend-
ant, and the reliance of the plaintiff upon the wrongful and fraudulent
representations of the defendant set forth, whereby the defendant con-
cealed from the plaintiff his interest in the property in respect to which
the accounting is sought, and averring that the plaintiff had no means of
ascertaining the falsity of the defendant's statements and representations
until a time specified, when such confidential relations ceased, and that
the plaintiff then first learned from others the facts in regard to his in-
terest, and stating the particulars of the discovery then made, sufficiently
states the ultimate facts as to the discovery.

Id. — FUND FROM SALE OF REAL PROPERTY — CONVEYANCE BY WIDOW —
DESCENT — COMMUNITY PROPERTY — TENANCY IN COMMON — INTEREST
OF CHILD — MEXICAN LAW. — Under the Mexican law in force in Cali-
fornia in 1849, real property purchased by a husband, at whose request a
conveyance was made to the wife, and which was thereafter held by her
as community property until the death of the husband, then immediately
descends to and becomes vested in the widow and children, without ad-
ministration, as tenants in common; and a child has no interest in and
cannot reach any part of a fund consisting of purchase-money received
for a conveyance by the widow, which did not and could not pass the
interest of the child in the real property.

Id. — SALE OF PERSONAL PROPERTY BY GUARDIAN — CONVERSION BY GUAR-
DIAN — WAIVER OF TORT — ASSUMPSIT — ACCOUNTING. — A guardian

who sells personal property belonging to his ward, and denies the right of the ward to any interest therein or in the proceeds, is guilty of a conversion, and the ward may waive the tort, and sue in *assumpsit* for the purchase-money; or if his rights were fraudulently concealed from him by the guardian until after final settlement of his accounts, he may sue him in equity for an accounting of the proceeds of the sale.

APPEAL from a judgment of the Superior Court of Santa Barbara County.

The facts are stated in the opinion.

*R. B. Canfield*, and *John J. Boyce*, for Appellant.

The superior court as a court of equity alone had jurisdiction of this action, as the cause of action set forth is based upon fraud, and the object of the action is to establish a constructive trust and have an accounting. Trusts, either express or implied, actual or constructive, have ever been held to constitute a subject over which equity has exclusive jurisdiction. (1 Story's Eq. Jur., secs. 184, 441; 2 Story's Eq. Jur., sec. 960; 1 Perry on Trusts, secs. 17, 166, 167.) It is a favorite rule of equity that when a court of chancery gains jurisdiction of a case for one purpose, it will retain it for others, and not do justice by halves. (*Belloc* v. *Rogers*, 9 Cal. 130; 6 Am. & Eng. Ency. of Law, 693, note 6, and cases cited.) As when a bill of discovery was brought in equity, the court will entertain the suit for the purposes of relief, particularly when fraud, account, trust, or other acknowledged head of equitable cognizance is shown. (1 Fonblanque on Equity, 11; 1 Story's Eq. Jur., secs. 70, 71; *Middleton Bank* v. *Russ*, 3 Conn. 135; 8 Am. Dec. 164, citing remarks of Lord Thurlow in *Lee* v. *Alston*, 1 Brown Ch. 194. See also *King* v. *Baldwin*, 17 Johns. 384; 8 Am. Dec. 415; *Ludlow* v. *Simond*, 2 Caines Cas. 1; 2 Am. Dec. 306.) The relation of guardian and ward constitutes the most important and delicate of trusts, and the rights and obligations which grow out of it are peculiarly within the jurisdiction of this court. This power to grant relief cannot be denied, unless taken away by express statutory enactment. (*Crain* v. *Barnes*, 1 Md. Ch. 151; *In re An-*

*drews*, 1 Johns. Ch. 99; 1 Story's Eq. Jur.,secs. 542, 543; *Drury* v. *Connor*, 1 Har. & G. 220.) As fraud is a matter of equitable cognizance, the jurisdiction is not lost by legislation giving the same authority to courts of law. (*Payne* v. *Bullard*, 23 Miss. 88; 55 Am. Dec. 75; 1 Pomeroy's Eq. Jur., sec. 305; *Bright* v. *Newlands*, 4 Sneed, 440; *Wells* v. *Pierce*, 27 N. H. 503, 513, and cases cited; *King* v. *Baldwin*, 17 Johns. 384; 8 Am. Dec. 415; *Varel* v. *Ins. Co.*, 7 Paige, 560. See also *Mitchell* v. *Otey*, 23 Miss. 236.) When a final account has been rendered in the probate court, and an administrator, an executor, or guardian has been discharged, and the estate distributed and the trust ,settled and closed up, if upon its face that decree is valid, it cannot be set aside in that court; and it can only be attacked upon some equitable grounds by a proceeding in a court of equity. (*Estate of Hudson*, 63 Cal. 454; *Dean* v. *Superior Court*, 63 Cal. 473; *Estate of Cahalan*, 70 Cal. 604.) When the decree of the probate court is attacked on the ground of fraud, like any other judgment it may be set aside in a court of equity, and it is only in that tribunal that such relief can be afforded. (*Tobelman* v. *Hildebrandt*, 72 Cal. 313.) It has been repeatedly held in this state that whenever descent is cast, and an accounting required between the representatives of the executor, administrator, or guardian, the jurisdiction of courts of equity can, alone afford relief. (*Bush* v. *Lindsey*, 44 Cal. 121; *Wetzler* v. *Fitch*, 52 Cal. 638; *Chaquette* v. *Ortet*, 60 Cal. 594; *Estate of Curtis*, 3 West Coast Rep. 682.) The concurrent jurisdiction of a court of equity with the probate court, over certain subjects of recognized equitable cognizance, is settled in this state. (*Wilson* v. *Roach*, 4 Cal. 362; *Clark* v. *Perry*, 5 Cal. 59; 63 Am. Dec. 82; *Belloc* v. *Rogers*, 9 Cal. 124; *Deck* v. *Gerke*, 12 Cal. 433; 73 Am. Dec. 555; *Payne* v. *Payne*, 18 Cal. 291; *Rosenberg* v. *Frank*, 58 Cal. 387; *Williams* v. *Williams*, 73 Cal. 99.) The plaintiff's primary right was to have his share of the money received by defendant from the sales of the property of Cæsario Lataillade's estate, and the delict of the defendant was his failure to pay the money over.

The remedy is twofold: 1. An accounting to ascertain what plaintiff's share amounts to; and 2. The enforcement of the payment. (Pomeroy's Remedies and Remedial Rights, sec. 455.) An action by heirs and administrator of a deceased *cestui que trust*, against the trustee, who held both real and personal estate in trust, for an accounting, a conveyance of the land, and a transfer of the personal property, was held to embrace but one cause of action. (*Richtmyer* v. *Richtmyer*, 50 Barb. 55.) The cause of action stated in this complaint is to recover a portion. (2 Rapalje and Lawrence's Law Dict., p. 976, tit. Portion.) It is single, for all the property now in question is of one kind, to wit, money; though the source of it was partly real property and partly personal property in which the plaintiff owned an interest. (See Pomeroy's Remedies and Remedial Rights, secs. 459, 460, and cases cited; *Bendernagle* v. *Cocks*, 19 Wend. 207; 32 Am. Dec. 448; *Bagot* v. *Williams*, 3 Barn. & C. 235.) This case is essentially one for relief on the ground of fraud, and as the discovery of the fraud was not made until within three years before the commencement of the action, the action is not barred by the statute of limitations. (Code Civ. Proc., sec. 338, subd. 4; *Boyd* v. *Blankman*, 29 Cal. 44; 87 Am. Dec. 146.) The charge of laches must fail, as it affirmatively appears that the trust and confidence naturally incident to such relationship as existed between plaintiff and defendant continued up to within three months of the time of the discovery of the deception which had been practiced by defendant, and of the making by plaintiff of the demand on defendant for an accounting. The case presented is one of secret fraud. (Pomeroy's Eq. Jur., sec. 917; *Meader* v. *Norton*, 11 Wall. 442; *Bailey* v. *Glover*, 21 Wall. 342, 348, and cases cited; *Michoud* v. *Girod*, 4 How. 503, 560, 561.)

*Garber, Boalt & Bishop*, for Respondent.

Assuming that the action is one for relief on the ground of fraud, the amended complaint does not show when or

how it was discovered, or diligence therein, and the action is therefore barred by the statute of limitations and by laches. (Code Civ. Proc., sec. 338, subd. 4.) A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it. A general allegation of ignorance at one time, and of knowledge at another, is of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. (*Carr* v. *Hilton,* 1 Curt. 230; *Wood* v. *Carpenter,* 101 U. S. 141; *Taylor* v. *South etc. R. R. Co.,* 4 Woods, 575, 584; *Hecht* v. *Slaney,* 72 Cal. 363, 367; *Norris* v. *Haggin,* 28 Fed. Rep. 276, 280, et seq.; *Moore* v. *Boyd,* 74 Cal. 167, 171; *Dannemeyer* v. *Coleman,* 8 Saw. 57; *Badger* v. *Badger,* 2 Wall. 94, 95; *Marsh* v. *Whitmore,* 21 Wall. 185.) The averments of discovery show only a discovery of conclusions of law, and not of facts, and are insufficient. (*Wood* v. *Carpenter,* 101 U. S. 141.) The amended complaint shows that the conveyances of the ranchos to plaintiff's mother put him upon notice of all the facts. The presumption from the face of the said conveyances was, that the ranchos were a part of the community property of the plaintiff's father and mother. Under the law then and ever since prevailing in California, up to the time of the amendment of section 164 of the Civil Code, in 1889, where land was conveyed to a married woman by a deed reciting a money consideration, the presumption was that it was community property. (*Peck* v. *Vandenberg,* 30 Cal. 11; *Peck* v. *Brummagim,* 31 Cal. 440; 89 Am. Dec. 195; *Vassault* v. *Austin,* 36 Cal. 691; *Riley* v. *Pehl,* 28 Cal. 70; *Ramsdell* v. *Fuller,* 28 Cal. 38; 87 Am. Dec. 103; *Schuyler* v. *Broughton,* 70 Cal. 282; *McComb* v. *Spangler,* 71 Cal. 418, 426; *Jack* v. *Torrence,* 83 Cal. 521, 529.) The case is not one of action for relief on the ground of fraud, or of discovery of facts constituting the fraud, within section 338, subdivision 4, of the Code of Civil Procedure, and the statute ran from the commission

of the acts complained of. It is only where fraud or mistake is the very *gravamen* of the action that ignorance or concealment of the facts constituting the cause of action, or of any facts relating to it, will prevent or postpone the running of the statute of limitations. (*Stewart* v. *Thompson*, 32 Cal. 263; *Soule* v. *Atkinson*, 18 Cal. 228; 79 Am. Dec. 174; *Taylor* v. *Bidwell*, 65 Cal. 489, 490; *Gale* v. *McDaniel*, 72 Cal. 334; *Chemical etc. Bank* v. *Kissane*, 32 Fed. Rep. 429.) In all other cases the statute runs from the doing of the act or the happening of the thing which constitutes the cause of action. (*Wood* v. *Currey*, 57 Cal. 210; *Raynor* v. *Mintzer*, 72 Cal. 585; *Gale* v. *McDaniel*, 72 Cal. 334.) And it is only where there is concealment and consequent ignorance of the facts constituting the fraud which is the *gravamen* of the action, and not of mere probative or collateral facts, that the statute will run only from discovery, even in actions for relief on the ground of fraud, as well as in other actions. (*Humphreys* v. *Mattoon*, 43 Iowa, 556; *Rouse* v. *Southard*, 39 Me. 404; *Penobscot R. R. Co.* v. *Mayo*, 65 Me. 566; *Rice* v. *Burt*, 4 Cush. 209; *Engel* v. *Fischer*, 102 N. Y. 400; 55 Am. Rep. 818; *Prescott* v. *Hubbell*, 1 Hill Eq. 217; *McLure* v. *Ashby*, 7 Rich. Eq. 444; *Miller* v. *Lesser*, 71 Iowa, 147; *Chemical etc. Bank* v. *Kissane*, 32 Fed. Rep. 429.) The ranchos being thus community property under the Mexican law, upon the death of the husband, by the same law, the title to them descended to and became immediately vested in the widow and children, one half in the former and one half in the latter, without the necessity of any administration. (*De la Guerra* v. *Packard*, 17 Cal. 193; *Soto* v. *Kroder*, 19 Cal. 87, 97; *Scott* v. *Ward*, 13 Cal. 470; *Fuller* v. *Ferguson*, 26 Cal. 565, 566; *Coppinger* v. *Rice*, 33 Cal. 421.) The conveyance by the defendant's wife of the ranchos passed only her four-sixths interest therein, as being a tenant in common with the plaintiff and his sister, each of whom was seised of one sixth thereof. Her conveyance of the whole of the land did not pass any more than her interest in the land, and the plaintiff, therefore, has no interest whatever in the consideration

received for that conveyance, and no cause of action against the defendant with respect to it. (Freeman on Cotenancy and Partition, secs. 196 et seq.; *Mahoney* v. *Middleton*, 41 Cal. 41, 52; *Gates* v. *Salmon*, 46 Cal. 361; *Dillon* v. *Brown*, 11 Gray, 180; 71 Am. Dec. 700; *Blood* v. *Goodrich*, 9 Wend. 68; 24 Am. Dec. 120; *Mussey* v. *Holt*, 24 N. H. 248; 55 Am. Dec. 234; *White* v. *Brooks*, 45 N. H. 405; *Bigelow* v. *Topliff*, 25 Vt. 273; 60 Am. Dec. 264; *Coppinger* v. *Rice*, 33 Cal. 421.) The cattle, like the land, were community property, and the defendant's wife was tenant in common with the plaintiff and his sister, in the former as well as the latter, owning an undivided four-sixths interest in each. The defendant did not and could not have sold anything more than his principal's undivided four-sixths interest, for she herself could sell no more. (*People* v. *Marshall*, 8 Cal. 51.) Since the adoption of the constitutional amendment of 1862, the probate court had and has exclusive jurisdiction of the settlement of accounts of guardians, executors, etc. (*Graff* v. *Mesmer*, 52 Cal. 637, 638; *Allen* v. *Tiffany*, 53 Cal. 16, 17; *In re Bowen's Will*, 34 Cal. 682.) As the jurisdiction of the probate court over the settlement of a guardian's account is exclusive, its final decree in such a case is of course conclusive in other tribunals, especially upon a collateral attack, and can be impeached only by some direct proceeding to modify or reverse it. (*Irwin* v. *Backus*, 25 Cal. 224; 85 Am. Dec. 125; *Fox* v. *Miner*, 32 Cal. 119; 91 Am. Dec. 566; *Brodrib* v. *Brodrib*, 56 Cal. 564, 565; *Allen* v. *Tiffany*, 53 Cal. 16; *Reynolds* v. *Brumagim*, 54 Cal. 254; Schouler on Domestic Relations, 3d ed., sec. 372.)

BELCHER, C. — The plaintiff commenced this action to obtain an accounting, and the appeal is from a judgment entered against him after demurrer sustained to his third amended complaint.

The facts stated in the complaint are, in substance, as follows: —

On the twelfth day of April, 1849, Cæsario Lataillade,

plaintiff's father, died intestate, in the town of Santa Barbara, where he was residing, leaving a widow and three minor children, of whom plaintiff, who was born December 2, 1849, was one.

After his marriage to plaintiff's mother, the decedent purchased two ranchos situated in what is now the county of Santa Barbara, and paid for them with his own funds; but at his request, the conveyances were executed to his wife as grantee, and were accepted by her for the benefit of her husband, and thereafter the ranchos were owned and possessed as the community property of the two. At the time of his death the decedent was also the owner of a large number of cattle then grazing upon the ranchos. For several years prior to 1849, defendant had the care and management of the ranchos and cattle as the agent of the decedent, and afterwards, with the consent of plaintiff's mother, he continued to have the same care and management, until the property was sold and disposed of, as hereinafter stated.

In 1854 the defendant married the plaintiff's mother, who is still his wife, and thereafter, during his minority and until July, 1885, plaintiff continuously lived in defendant's family, and was brought up and treated as his own child. In the same year defendant was duly appointed the guardian of plaintiff's person and estate, and continued to act as such until the latter became of age.

From time to time, after April, 1849, defendant sold all of the said cattle, but for what sum or sums of money plaintiff is not advised; and in 1868 he negotiated a sale of the ranchos for the sum of twenty-seven thousand dollars, or thereabouts, and induced the plaintiff's mother to execute deeds thereof to the purchasers, and to permit him to, receive the entire purchase-money. The defendant received all the money paid for the cattle and ranchos, and mingled the same with his own funds, and wrongfully and fraudulently converted the same to his own use, with the intent to deprive plaintiff of his lawful share thereof.

At all the times mentioned, defendant knew that the
cattle and ranchos were owned by the plaintiff's father
at the time of his death, and that plaintiff became the
owner of an interest therein as his heir; but he always
concealed this fact from the plaintiff, and wrongfully and
fraudulently represented to him that his father died in-
solvent, and that he had no interest in the cattle or
ranchos.

When defendant was appointed guardian of plaintiff,
he filed in court an inventory purporting to show all the
estate of his ward, but he did not, in that inventory or
in any inventory, or otherwise, at any time include any
of the aforesaid property; and when he applied for and
obtained a final discharge from his trust, he falsely
stated in his petition, and represented to the court, that
he had returned a full and true inventory of all the
estate of plaintiff which had come into his hands as
guardian, and paid over and delivered the same to the
plaintiff.

This condition of things continued until July, 1885,
the plaintiff all the time during his minority, and after-
wards, relying implicitly on the statements and repre-
sentations of defendant concerning plaintiff's property
rights and the condition of his father's estate, and hav-
ing no means of ascertaining the falsity of such state-
ments and representations.

In the last-named month difficulties and disputes arose
between the parties, and the plaintiff then left the house-
hold of defendant, and ceased to be a member of his
family, or to have friendly or confidential relations with
him.   "Thereupon this plaintiff, in interviews with per-
sons who had acted in the capacity of servants upon the
ranchos belonging to his said father, for the first time
ascertained that his father, during his lifetime, had the
interests in said real and personal property as particu-
larly hereinabove set forth, and that said property was
in the custody, care, and management of the defendant
at the time of the death of his said father; and this plain-
tiff was then, for the first time, directed to one Augustin

Janssens, who carried on business in the said county of
Santa Barbara during the married lifetime of the said Cæ-
sario Lataillade, deceased, and at the time of the purchase
of the said ranchos, who then, for the first time, showed
this plaintiff, by entries in his commercial books regu-
larly kept in his business, wherein his daily transactions
were entered at the time they took place, that he had
acted as the agent of the said Cæsario Lataillade in re-
spect to the payment of the purchase-money of said ran-
chos; and plaintiff avers that said account-books and
the statements of said Janssens then and there disclosed
to this plaintiff that his father was the owner of said
ranchos, and that he was the real purchaser thereof, and
the owner of the said cattle thereon."

Shortly after these discoveries, plaintiff demanded of
defendant a full accounting of all his dealings with the
property of the deceased Lataillade since his death, and
the increase thereof, but defendant refused, and still re-
fuses, to render to plaintiff any such account, or any
account whatever, in relation to the said property.    The
proceeds of the catt'e and lands disposed of by defendant,
as aforesaid, are still in his hands, and plaintiff is the
owner of and entitled to the one-sixth part thereof, to-
gether with the increase and profits arising therefrom.

The complaint was filed on the twenty-first day of
February, 1887, and the prayer was, that defendant be
compelled to account for all his dealings and transactions
with the said property, and the proceeds and increase
thereof; that he be charged interest on all sums of money
received by him from the sales of the property, com-
pounded annually; and that plaintiff have judgment for
such amount as he may be found entitled to.

The demurrer was upon the grounds that the court
had no jurisdiction of the subject-matter of the action;
that several causes of action were improperly united, and
not separately stated; that the complaint did not state
facts sufficient to constitute a cause of action, for the rea-
son that it appeared on the face thereof that the cause of
action was barred by the statute of limitations and by

the plaintiff's laches; and that the complaint was ambiguous, unintelligible, and uncertain in several particulars. It does not appear upon what ground the demurrer was sustained.

1. The respondent contends that the probate court had exclusive jurisdiction to compel defendant to account as guardian, and that its decree, settling his accounts and discharging him from his trust, was final and conclusive; and in support of this position numerous authorities are cited. This is undoubtedly the general rule applicable to the settlement of the accounts of guardians, executors, and administrators, but we do not think it applicable to a case like this. Here, if the averments of the complaint are true,—and they must be assumed to be so for the purposes of this decision, — none of the matters now in controversy were passed upon in the settlement, for the reason that the guardian intentionally and fraudulently concealed from the court and his ward the fact that the latter had then or ever had any interest in the property in question. The cases cited state and apply the general rule, but, so far as we have discovered, no one of them goes to the extent of holding that such a settlement can shield a guardian from afterwards being called upon in a court of equity to account for the property so concealed. The rule applicable to the case is correctly stated in *Griffith* v. *Godey*, 113 U. S. 89. In that case, Mr. Justice Field, in delivering the opinion of the court, said: "It is well established that a settlement of an administrator's account, by the decree of a probate court, does not conclude as to property accidentally or fraudulently withheld from the account. If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might, in such case, open its decree and administer upon the omitted property. And a fraudulent concealment of property, or a fraudulent

disposition of it, is a general and always existing ground for the interposition of equity." (And see *Estate of Hudson*, 63 Cal. 454; *Dean* v. *Superior Court,* 63 Cal. 473; *In re Cahalan*, 70 Cal. 604; *Tobleman* v. *Hildebrandt*, 72 Cal. 316.)

2. In support of the second ground of demurrer, it is claimed that the transactions in regard to the land and cattle were entirely distinct, and involved different facts, and that they constituted two distinct causes of action, which should have been separately stated. But as we read the complaint, it states only one cause of action; namely, for an accounting as to moneys received by defendant, and in part held by him in trust for plaintiff. The money received constituted in defendant's hands a single fund, though derived from sales of real and personal property, and received at different times.

3. The third ground of demurrer seems to be the one mainly relied upon as justifying the ruling of the court, and it is very elaborately discussed by counsel.

The code provides that an action for relief on the ground of fraud or mistake must be commenced within three years; but the cause of action in such case is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. (Code Civ. Proc., sec. 338, subd. 4.)

Was the cause of action in this case saved from the bar of the statute by this section? Counsel for respondent earnestly contend that it was not, for several reasons.

(*a.*) It is urged that the action was not one for relief on the ground of fraud. It is true, the action was for an accounting, but the grievance complained of was, that defendant knowingly received and held moneys in trust for plaintiff, and appropriated the same to his own use, and at all times fraudulently concealed from plaintiff the fact that he had ever received or held any such moneys, or any money in which plaintiff had any interest. It seems to us, therefore, that the averments make a case of the class provided for in the section of the code above cited.

XCI. CAL.—37

(*b.*) It is urged that the averments respecting the discovery of the fraud are wholly insufficient   It is said that a party seeking to avoid the bar of the statute on account of fraud must show that he used due diligence to detect it, and if he made any particular discovery, should state when it was made, what it was, how it was made, and why it was not made sooner; and further, that one will be presumed to have known whatever with reasonable diligence he might have ascertained concerning the fraud of which he complains.

The foregoing propositions seem to be well supported by the authorities. (*Wood* v. *Carpenter*, 101 U. S. 140; *Badger* v. *Badger*, 2 Wall. 94; *Hecht* v. *Slaney*, 72 Cal. 367.) And the question is, whether or not, in view of them, the averments of the complaint are sufficient.

It must be observed that the relations of the parties were such as would naturally inspire trust and confidence on the part of the plaintiff in the defendant. The defendant was plaintiff's step-father and guardian, and brought him up in his own family and as his own son. Plaintiff always, up to the time of the rupture in 1885, placed implicit confidence in whatever defendant told him, and never doubted its truth. He had no knowledge, and no reason to suspect, that a fraud was being practiced upon him. There was nothing, therefore, to put him upon inquiry, and under such circumstances we do not see how it can be said that he failed to use due diligence to detect the fraud, or how he can be presumed to have known anything concerning it. The complaint does state, we think, when the discovery was made, and what it was, and how it was made, and why it was not made sooner. It is claimed, however, that the averments as to the discovery were of mere conclusions of law, and not of the facts.

It is true that pleadings should state the ultimate facts, and not the probative facts or conclusions of law. But what are ultimate facts and what conclusions of law are often mixed and uncertain questions. (*Levins* v. *Rovegno*, 71 Cal. 273; *Turner* v. *White*, 73 Cal. 299.)

The same averment may be of a fact or of a conclusion
of law, according to the context. We think the aver-
ments here complained of should be held sufficient as
statements of fact.

(*c.*) Conceding all that has been said to be true, it is
further contended that no cause of action against the
defendant respecting the two ranchos or their proceeds
is shown.

The argument on this point, briefly stated, is as fol-
lows: According to the averments of the complaint,
plaintiff's father purchased the ranchos with his own
funds; but at his request, the conveyances thereof were
made to his wife, who thereafter held the same as com-
munity property. Being community property, the title
to the ranchos, under the Mexican law then in force,
upon the death of the husband immediately descended
to and became vested in the widow and children, with-
out the necessity of any administration. (*De la Guerra*
v. *Packard*, 17 Cal. 183; *Scott* v. *Ward*, 13 Cal. 459.) The
plaintiff and his mother became tenants in common of
the property, and were such at the time of the alleged
sale thereof. The mother had no power to sell or con-
vey the plaintiff's interest, and there is nothing to show
that she attempted to do so. And if she did, the deeds
did not pass or affect his interest in any way. He could
afterwards have asserted his right thereto just as well as
if no deeds had been made, and possibly could do so
now. The purchase-money received was therefore the
money of the mother, in which the plaintiff had no in-
terest.

This argument seems to be sound, and the conclusions
reached correct.

A similar claim is made in regard to the cattle and
their proceeds, but we do not think it can be sustained.
The defendant sold all the cattle and received all of the
purchase-money, and converted the same to his own use.
As to the plaintiff's interest, the sale was a conversion;
but he could waive the tort, and sue in *assumpsit* for
his share of the purchase-money, or, under the circum-

stances shown here, for an accounting. (Pomeroy's Remedies and Remedial Rights, sec. 110.)

4. We see nothing in the fourth ground of demurrer calling for special consideration. As we read the complaint, it is not ambiguous, unintelligible, or uncertain in any material respect.

We advise that the judgment be reversed and the cause remanded, with directions to the court below to overrule the demurrer.

TEMPLE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed and the cause remanded, with directions to the court below to overrule the demurrer.

Rehearing denied.