[Civ. No. 19800.   First Dist., Div. Three.   Jan. 29, 1962.]

CHARLES P. WILSON, Plaintiff and Appellant, v. OLGA ROSE WILSON et al., Defendants and Respondents.

McBride, Coll & Conti for Plaintiff and Appellant.

Whitney & Hanson for Defendant and Respondent Olga Rose Wilson.

DRAPER, P. J.—Plaintiff appeals from judgment entered after sustaining of demurrer to the third amended complaint without leave to amend.

By agreement executed in 1915, Frank Pauson transferred in trust 20 shares of Frank Pauson & Sons, a corporation. Dividends thereon were directed to be paid by the trustees to the trustor's daughter, Olga Wilson, for life. Upon her death, dividends were to be paid to her surviving "issue" in equal shares. Upon her youngest surviving "child" reaching the age of 25 years, the corpus was to be distributed to "the then surviving children of said Olga Wilson, share and share alike." Frank Pauson died in 1916. Olga Wilson died in 1953. The third amended complaint alleges that plaintiff is the only "natural child" of Olga Wilson, and that he was older than 25 at the date of Olga's death. The original complaint alleged that defendant Olga Rose Wilson was adopted by Olga in 1944. The third amended complaint alleges that "in using the words 'children' and 'issue' in said trust agreement the said Frank Pauson intended to designate the natural born children of the life beneficiary, Olga Wilson, to the exclusion of all other persons." It also alleges that: Olga Rose was 14 years old in 1953; after Olga Wilson's death and on May 20, 1953, the surviving trustee, Jacob W. Pauson, in violation of the terms of the trust distributed 10 shares to plaintiff and 10 to the guardian of Olga Rose; Jacob represented to plaintiff that the trust provided for such distribution; plaintiff relied upon Jacob; plaintiff "did not know the terms and provisions of and had never read the trust"; because plaintiff relied upon Jacob's representation he did not question the retention of the stock by Olga Rose. It then alleges that about November 1, 1957, "plaintiff for the first time learned of the terms and provisions of the trust," and promptly demanded return of the 10 shares held by Olga Rose, together with dividends theretofore paid. This action was commenced January 29, 1959. Defendants are Olga Rose, Jacob, and the corporation, the latter being joined only to compel transfer of the stock if decree be in favor of plaintiff.

Defendants' demurrer set up several statutes of limitation (Code Civ. Proc. §§ 338, subd. 3, 338, subd. 4, and 343). We have concluded that the action is barred by section 338, subdivision 4.

It is true that the three-year statute does not commence to run against an action for fraud or mistake until discovery thereof (Code Civ. Proc. § 338, subd. 4; *Hobart* v.

*Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958]). But the burden is upon plaintiff to allege and prove facts which show the date and manner of such discovery.

As it is often stated, plaintiff must plead facts to excuse the late discovery (*Johnson* v. *Ehrgott*, 1 Cal.2d 136, 137 [34 P.2d 144]; *Lady Washington Consol. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809]). It is not sufficient merely to allege ignorance at one time and discovery at another (*Burke* v. *Maguire*, 154 Cal. 456, 465 [98 P. 21]). Rather, the circumstances of the claimed discovery must be pleaded (*English* v. *City of Long Beach*, 126 Cal.App.2d 414, 420 [272 P.2d 875]), and it is then for the court to determine from such allegations whether the delay was excusable (*Bank of America* v. *Vannini*, 140 Cal.App.2d 120 [295 P.2d 102]).

While this rule is relaxed when a confidential relationship is involved (*Stevens* v. *Marco*, 147 Cal.App.2d 357 [305 P.2d 669]), the mere existence of such a relationship does not wholly eliminate the requirement that the circumstances of discovery must be pleaded. There must be some showing that a reasonably material fact was not known to plaintiff at the time of the transaction and some showing of the means by which it was later discovered (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 430 [106 P.2d 423]).

Here there is no such showing. The only allegation of discovery is that on November 1, 1957, some three years and five months after distribution of the trust estate, "plaintiff for the first time learned of the terms and provisions of the trust." Nowhere does he show what he discovered in the trust instrument to indicate that an adopted child of trustor's daughter was excluded from participation.

The trust instrument, set out as an exhibit to the third amended complaint, does use the word "issue" in providing for payment of dividends, and the words "child" and "children" in providing for ultimate distribution of principal. But the verified original complaint alleged that termination of the trust and distribution of its assets to plaintiff and Olga Rose Wilson on May 20, 1953, was effected under an agreement executed by plaintiff. This agreement, set forth as an exhibit to the original complaint, recites with complete fidelity to the trust instrument, that it provided "the said shares were to be distributed among the then surviving children of said Olga Wilson, share and share alike." The original complaint alleges that Olga Rose Wilson, here a defendant, was the adopted daughter of Olga Wilson. If these allegations rend-

ered the complaint vulnerable, a cure cannot be effected merely by omitting them from subsequent complaints, as was done here (*Wennerholm* v. *Stanford University School of Medicine*, 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]).

Thus the facts that distribution of the corpus was to be to the "children" of Olga Wilson, and that Olga Rose was an adopted child, were quite as well known to plaintiff when he executed the distribution agreement in 1953 as when he "discovered" the trust instrument in 1957. The most that could have been "discovered" on reading of the trust instrument was that it used the word "issue" in providing for distribution of dividends. But there is little room for distinction between "children" and "issue" in construing a will or trust to determine whether an adopted child is included (see *Estate of Stanford*, 49 Cal.2d 120, 135-140 [315 P.2d 681]). Nowhere does the trust instrument contain express exclusion of adopted children, or such impliedly exclusionary language as "heirs of my body."

It is true that whether the terms "children" and "issue" include an adopted child is a matter of intent of the testator or trustor (*Estate of Stanford, supra*). Here plaintiff alleges that the trustor "intended to designate the natural born children of the life beneficiary, Olga Wilson, to the exclusion of all other persons." But nowhere does he allege, even by indirection, that this claimed intention was not known to him when he executed the agreement and accepted distribution to himself of half the shares in 1953. Thus even if the pleading in this respect stated a cause of action, it shows on its face that the action was not filed in time.

It is true that under the pleaded trust instrument the trust is to continue until the youngest surviving child of Olga Wilson becomes 25, and that defendant Olga Rose has not yet reached that age. However, it is completely clear from the complaint that this is not the wrong attacked. It is the fact of distribution to Olga Rose, and not the time of distribution to her and plaintiff which is the gravamen of plaintiff's complaint. The prayer seeks only transfer of the 10 shares of Olga Rose to plaintiff, and not the return of the entire 20 shares to the trust. Plaintiff nowhere offers to return to the trust the shares distributed to him in 1953. While this is entirely consistent with his claim that he is the sole beneficiary of the trust, it is wholly inconsistent with an assertion that the distribution was wrongful in the time at which it was made. Further, plaintiff having executed his written agreement and

consent to the distribution to himself and Olga Rose in 1953, and accepted the benefits thereof for more than five years before commencing this action, is hardly in a position to challenge the mere timeliness of the distribution.

Plaintiff relies strongly on the confidential relationship between himself and trustee Jacob Pauson to defeat the bar of the statute of limitations. It is significant, therefore, to note that plaintiff carefully avoids any allegation of fraud, knowing misrepresentation, or wrongdoing of any sort on the part of the trustee. Nor does he allege any request by himself for, or denial by the trustee of, inspection of the trust instrument. On the contrary, plaintiff's opening brief concedes "there is nothing in the pleadings which charges trustee Jacob W. Pauson with wrongful intent." Slightly more than two months after his notice of appeal from the judgment in favor of all three defendants (beneficiary Olga Rose Wilson, trustee Jacob W. Pauson, and the corporation joined solely to compel transfer of the stock to plaintiff if decreed by the court), plaintiff filed in the trial court a formal abandonment of his appeal from that portion of the judgment "which relates to defendant Jacob W. Pauson." Thus plaintiff has himself given finality to the judgment in favor of the trustee and has absolved him of all liability for any claimed breach of his fiduciary relationship to plaintiff. We find some difficulty in reconciling this position with the contention that a breach of fiduciary duty in some way tolls the operation of the statute as against defendant beneficiary, who was a minor at the time of the 1953 distribution and is not claimed to have participated therein in any affirmative way.

In view of our conclusion that the action is barred by the statute of limitations, it is unnecessary to consider the claim that the trust is invalid, or that the action is barred by laches.

Judgment affirmed.

Devine, J., concurred.

SALSMAN, J.—I dissent.

The plaintiff's complaint is sufficient to pass the test of a general demurrer. We must here assume that all of the pleaded facts are true. (*Jensen* v. *City of Modesto,* 89 Cal.App.2d 835 [202 P.2d 332]; *Abroms* v. *New York Life Ins. Co.,* 53 Cal. App.2d 764 [128 P.2d 391].) The complaint shows the creation of the trust; it alleges that the trustor intended only the natural born children of the life beneficiary to receive the trust

property on distribution, to the exclusion of all other persons; that plaintiff is the only natural child of Olga Wilson, the life beneficiary; that in violation of the terms of the trust, and in 1953, the trustee distributed one-half of the trust property to Rose Wilson and one-half to the plaintiff; that at the time of the distribution the trustee represented to the plaintiff that the terms and provisions of the trust provided that such distribution be made at the time and in the manner it was made; that plaintiff relied upon the representations of the trustee and placed full faith and confidence in the trustee, and that plaintiff did not know the terms and provisions of the original trust instrument, and did not question the distribution as made by the trustee; that on or about November 1, 1957, plaintiff for the first time learned of the terms and provisions of the trust, and made demand upon Rose Wilson for the return of the trust property distributed to her. In paragraph XI of the third amended complaint plaintiff also alleges: "That, but for the false representations as to the terms of the trust (Exhibit 'A') so made to him by defendant trustee JACOB W. PAUSON, plaintiff would have protested the distribution of any portion of the trust to defendant OLGA ROSE WILSON and the payment of dividends thereon to her."

This complaint states a cause of action which, its allegations being admitted by the demurrer, entitles the plaintiff to relief.

It is held against the plaintiff that he has not sufficiently pleaded the facts to show (a) the date and manner of his discovery of the fraud or mistake, and (b) the facts and circumstances of his discovery so that the court may determine if his delay be excusable.

As against a general demurrer the pleadings must be liberally construed. (*Bank of America* v. *Vannini*, 140 Cal.App. 2d 120 [295 P.2d 102].) Here the plaintiff has pleaded the date of his discovery (1957), and the manner of his discovery (by reading for the first time the terms and provisions of the trust instrument itself). It is true that the plaintiff has not pleaded in detail the facts to show why he was unable to or did not have the original trust instrument before him from the date of distribution in 1953 until 1957. He has, however, alleged that up to the time of distribution he had not read the trust instrument and that he relied fully upon his trustee for the proper execution of its terms and provisions. A justifiable reliance upon his trustee is in my opinion a sufficient showing to toll any statute of limitations which might otherwise be applicable, and to excuse the plaintiff from being

charged with a late discovery of his trustee's false representations.

Although the plaintiff has dismissed the trustee as a party and seeks no personal judgment against him, he does plead here in equity for the return of the property which the demurrer admits the trustor intended him to have. It makes little difference whether the stated basis of his suit—"false representations as to the terms of the trust"—be characterized as fraud or mistake. The result is the same—the plaintiff has lost the trust property. The dismissal as to the trustee should not bar the plaintiff's pursuit of the trust property. (*Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629 [218 P. 14]; Rest., Restitution, § 161; 90 C.J.S., Trusts, § 445; Witkin, Summary of California Law, pp. 843 and 2921.)

The record here shows a long continued and close fiduciary and family relationship between these parties. Under the facts shown in the record, if indeed any statute of limitations is applicable at all, one need not be rigidly applied. There is an abundance of authority entitled to the highest respect which suggests a different, and I believe a better resolution of this case. In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958] at pages 439-440, it is stated: "Another pertinent factor is that there was a fiduciary relationship between the parties at the time of the fraudulent representations. Although the general rules relating to pleading and proof of facts excusing a late discovery of fraud remain applicable, it is recognized that in cases involving such a relationship facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required. In *Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383], it was said that because of such a relationship plaintiff could not be charged with lack of diligence even though an inquiry would have disclosed the true value of the property involved. (See also *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 430 [106 P.2d 423]; *Knapp* v. *Knapp,* 15 Cal.2d 237, 242 [100 P.2d 759]; *Lataillade* v. *Orena,* 91 Cal. 565 [27 P. 924, 25 Am.St.Rep. 219]; *Laraway* v. *First Nat. Bk. of LaVerne,* 39 Cal.App.2d 718 [104 P.2d 95]; 12 Cal.Jur. 799; (1942) 30 Cal.L.Rev. 589, 591; *cf. Marston* v. *Simpson,* 54 Cal. 189; *Edward Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561, 575-577 [126 P. 351, 42 L.R.A. N.S. 125].)"

I deem it unnecessary, therefore, that the original intention of the trustor, so long maintained, should now perish in frus-

tration and defeat. I would reverse the judgment and allow the cause to be decided on its merits.

A petition for a rehearing was denied February 20, 1962. Salsman, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied March 28, 1962.