[Civ. No. 5846. Third Appellate District.—May 24, 1938.]

THE CALISTOGA NATIONAL BANK (a Corporation), Respondent, v. CALISTOGA VINEYARD COMPANY, LTD., et al., Appellants.

King & King for Appellants.

Clarence N. Riggins, Louis Ferrari, G. D. Schilling and Keyes & Erskine for Respondent.

PULLEN, P. J.—This is an appeal from a judgment on the retrial of an action resulting in a reversal of the former judgment (7 Cal. App. (2d) 65 [46 Pac. (2d) 246].) The facts generally upon which this appeal is based will be there found, and we need not again set them forth at length.

In that opinion we held that the trial court erred in sustaining objections to the effort on the part of the vineyard company to prove their affirmative defense of equitable estoppel. We also held that the trial court erred in finding that the plaintiff did not agree to "take into consideration" the forged checks when the note was paid, the evidence being uncontradicted to the effect that the bank did promise so to do, and that the finding to the contrary was not supported by the evidence. This court also implied that if the statement was relied upon by the vineyard company that the bank would take into consideration the forged checks when the note was paid, the bank would be estopped from setting up the statute of limitations as a defense. For the reason, therefore, that the vineyard company was precluded in the first trial from introducing evidence in support of its affirmative defense of equitable estoppel by waiver of the statute of limitations for the commencement of an action to recover the sum of the forged checks, and by the finding by the court that the counterclaim was barred by the provisions of subdi-

vision 3 of section 340 of the Code of Civil Procedure, the judgment was reversed. We now have before us for consideration the second trial following such reversal.

The trial judge in the retrial of the action, among other things, found that the plaintiff bank had charged certain checks totaling $850 against the defendants' account in plaintiff's bank, and had withdrawn funds to that amount from the bank account of defendants, and found that the signatures of defendants to said checks were forged.

The court further found that it was not true, however, that the plaintiff banking company had promised or agreed to credit the amount of these checks to defendants, or that it had promised or represented to defendants that the question of said forgeries would be taken into consideration at such time as defendants should tender payment of the balance under a promissory note given by the vineyard company to the bank, and in accordance with that finding also found that defendants were not entitled to a set-off by way of counterclaim for the amount of said notes, and also found that the counterclaim was barred by the statute of limitations.

At the conclusion of the present trial, the judge presiding filed an opinion, reciting the facts as he found them, and came to the conclusion that the judgment of the appellate court on the first appeal did not establish the law of the present case, owing to the fact that the testimony was not the same at the former trial.

The difference in testimony, if any, has to do largely with certain conversations had between the officers of the two corporations here involved. At the first trial Mr. Forni testified, as found in the opinion of the court, that

"Mr. Westover (cashier and vice-president of plaintiff bank) told him 'he would off-set the amount of . . . these checks against the amount on your checks'. He later testified that Mr. Westover said, 'he didn't know just what the bank's attitude would be toward . . . these forged checks'; that Westover then urged him to pay their note, and said 'the minute we were ready to take care of this $4,000.00 note that he would take the other matter into consideration'."

In this trial defendant Forni testified upon direct examination concerning the same conversation held January 5, 1931, when he and his partner Bianchi went to the bank to discuss the forgeries, as follows:

"At the end he (Westover) mentioned our $4000.00 note and he said when we were ready to pay the note he would take the $850.00 into consideration. We asked him to reimburse us, and to the best of my memory he said he didn't know just what attitude they could take about the $850.00 checks. Rocca came in at the end of the conversation, but he didn't say anything."

Mr. Bianchi testified at this trial in regard to the same conversation held on January 5th, as follows:

"Charles (Forni) told Westover, Bower had forged these checks for $850.00 and asked if the bank would make good. Westover said that when our note for $4000.00 was taken up he would take the $850.00 into consideration. We never took any steps to collect the $850.00 from the bank because I relied upon Westover's promise."

In substance the testimony of the two witnesses as to this conversation is the same at the second trial as at the first. Some questions also arose as to whether or not Mr. Rocca, president of the bank, was present during the foregoing conversation. At the first trial Mr. Rocca first testified that he was present and overheard the conversation between Forni and Westover. Later, however, at the trial, Mr. Rocca testified: "I was not present at the conversation on January 5, 1931, between Mr. Bianchi, Mr. Forni and Mr. Westover."

In this trial Rocca testified that when the conversation first began he was checking over some notes, but later returned to his desk about ten or twelve feet from the desk where Mr. Westover, Mr. Bianchi and Mr. Forni were discussing the note, and that he was at his desk not over from three to five minutes, and that he did not hear the commencement of the conversation. He testified, however, that he heard nothing said by Mr. Westover in regard to taking into consideration the amount of the forged checks in any adjustment of the balance due on the promissory note.

It is to be noted that at the former trial Mr. Westover, although the cashier and vice-president of the bank and the officer with whom defendants claimed to have discussed the adjustment, was not called as a witness, and that before the second trial Mr. Westover was dead. Mr. Westover was a witness available to the bank, and we have the right to assume that his testimony would have been adverse if he had been called. In view of the various conflicting statements made

by Mr. Rocca his testimony is not of the strongest, and also inasmuch as he stated he heard only three to five minutes of the end of the conversation, it in no way contradicts the statements of Mr. Forni and Mr. Bianchi that Mr. Westover did state that he would take into consideration the amount of the checks, which still leaves undisputed the statement of Bianchi and Forni that the cashier, Mr. Westover, stated he would take into consideration the forgeries. We are of the opinion that there is no substantial conflict in the evidence between the first and second trials.

The only point on the retrial was whether or not the evidence introduced to establish the fact that the defendants relied upon the statements of Mr. Westover that the amount would be taken into consideration was sufficient to establish that fact. Our former opinion found that the conduct and representations of the bank were sufficient to estop it, if defendants could establish the fact that the defendants did rely thereon, thus leaving it only to be ascertained whether or not in the present case such evidence has been adduced.

Here we find the uncontradicted testimony of both defendants that they did rely upon the statements of Mr. Westover that as soon as they were able to pay the note the checks would be taken into consideration.

We have but to examine the circumstances here to appreciate the fact that defendants were in a difficult position and were, as a matter of fact, compelled to rely upon the statements of the bank. They were indebted to the bank in the sum of $4,000, payable on demand. They claimed the bank owed them $850 on forged checks, which had been paid by the bank. The bank informed them that they were in default in the sum of $4,000 and that the note must be paid. We may assume that the defendants were unable to pay the amount demanded or the note would have been taken up. Therefore, they were in a position where they were compelled either to accept the proposition of the bank, that when they were able to pay the $4,000, the bank would then consider the off-set of the forged checks, or in lieu thereof have the bank commence an action against them with its resultant injury to their credit and business standing.

It no place appears in the record that the bank refused absolutely to pay the amount of the forged checks. The fact that the bank stated it would, at the time of the payment of

the note, take into consideration the forged checks, was sufficient to suspend the running of the statute of limitations. The bank questioned whether or not the checks were forgeries, but that matter has been found against the bank in both this and in the former trial.

We believe that sufficient has been said without going into an analysis of the authorities cited by both parties, the determining issue from our point of view whether or not the previous appeal, on substantially the same facts, established the law of the case. We are of the opinion that both this court and the trial court are now bound to accept the law as then established.

The judgment is reversed, and the court is directed to enter judgment in favor of plaintiff in the sum of $233.68, without interest.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 23, 1938.