[Civ. No. 8494.   First Appellate District, Division One.—June 6, 1932.]

MARY MAHER MITCHELL, Respondent, v. J. H. ROTH & COMPANY (a Corporation) et al., Appellants.

David H. Cannon for Appellants.

Willard G. Cram for Respondent.

DOOLING, J., *pro tem.*—The plaintiff in this action and her assignor, Mrs. Riley, who is plaintiff's sister, were each induced to purchase shares of the capital stock of Transcontinental Petroleum Corporation by certain representations of defendant Lowery, which representations the trial court found were false and fraudulent. Pursuant to her agreement with Lowery, plaintiff delivered to Lowery sixty-seven shares of the capital stock of Shell Union Oil Company, which Lowery represented to her would be hypothecated with a bank as security for a loan to cover one-half the purchase price of the Transcontinental Petroleum Corporation stock which she was buying, with the assurance that the Shell Union stock would remain the property of plaintiff and in no event would be sold. In like manner Mrs. Riley paid to Lowery $750 which was received as payment of one-half the purchase price of the stock which Mrs. Riley agreed to buy. Among the false representations made by Lowery was a representation that the stock had a present value of $25 per share, and that on April 1, 1929, it would be placed on the stock market at $35, and that he could dispose of the stock purchased by plaintiff and her assignor for them at that time for $35 per share, thus netting them each a profit of $10 per share on the transaction. On June 18, 1929, plaintiff and her assignor having learned in the meantime that the stock which they had thus agreed to purchase was practically worthless, served notice of rescission on the defendants, and this action followed. The court found that throughout the transactions defendant Lowery was acting as agent for defendants J. H. Roth and J. H. Roth & Company and gave judgment against all three for $1905, the value of the Shell Union stock which had in the meantime been sold, and $750, the amount paid by Mrs. Riley.

From this judgment defendants Roth and J. H. Roth & Company prosecute this appeal. Appellants make three points on appeal: 1. That the contracts for the purchase of the Transcontinental stock were illegal because in violation of section 26, article IV, of the California Constitution; 2. That plaintiff and her assignor did not rescind promptly as required by section 1691 of the Civil Code; 3. That the finding that defendant Lowery was the agent of J. H. Roth finds no support in the evidence.

Taking these propositions in the order stated, the portion of section 26, article IV, of the Constitution relied upon by appellants reads: "All contracts for the purchase or sale of shares of the capital stock of any corporation or association without any intention on the part of one party to deliver and of the other party to receive the shares, and contemplating merely the payment of differences between the contract and market prices on divers days, shall be void, and neither party to any such contract shall be entitled to recover any damages for failure to perform the same, or any money paid thereon, in any court of this state."

In the case before us both plaintiff and her assignor signed contracts in writing in which they agreed to buy the stock, each containing the following language: "It is understood and agreed . . . that actual delivery is contemplated." Thus on their face the contracts were not violative of the constitutional provision. It is appellants' contention, however, that the testimony shows that both plaintiff and her assignor had the oral understanding with Lowery that they were not to receive the shares of stock or pay the balance due on them, but that Lowery agreed to sell the stock on April 1, 1929, for $35 per share and to pay them the difference between that sum and $25 per share, the price at which they had agreed to buy. Even thus nakedly stated, we are satisfied that the transaction is not in violation of the constitutional provision. The agreement was not the ordinary short-selling agreement in which the parties gamble upon the price of the stock at a fixed future date, the buyer to win if the stock goes up and the seller to win if it goes down. Here was no gamble at all. In consideration of their agreement to buy the stock and the payment of one-half of its purchase price Lowery promised absolutely that on April 1st he would sell the

stock for a definite price, $35 per share. If he could not sell it for $35 on April 1st, he was not to sell it at all, nor did he make any effort to sell it at that date at a lower price. The plaintiff testified that she understood that if the stock did not sell for $35 on April 1st, "then I was to get my certificates"; and plaintiff's assignor, Mrs. Riley, testified that she thought she owned the stock.

■ We are satisfied that the constitutional provision in question is designed merely to prohibit dealing in futures with no intention to purchase or sell actual shares of stock, but merely to "pay off" upon the rise or fall of the market between fixed days. (*Wilcox* v. *Edwards,* 162 Cal. 455, 459, 460 [Ann. Cas. 1913C, 1392, 123 Pac. 276].) This was not such a transaction.

■ The contention that plaintiff and her assignor did not rescind promptly is based upon the claim that plaintiff became suspicious of the transaction some time in February, and her assignor learned that the representations were false not later than the middle of May, and the notices of rescission were not served until June 18th. However, the evidence shows that plaintiff saw defendant Roth early in April and at that time Roth promised to give back her securities to her; that some time later in April she saw defendant Lowery and Lowery said: "Well, I got you into this and I am going to get you out"; and that on May 1st Roth induced plaintiff and her assignor to give him orders to sell their Transcontinental stock, saying that he would sell the stock and then he would straighten everything up. On May 20th plaintiff and her assignor each sent a letter to Roth demanding that he keep his promises to them and on June 18th, the notices of rescission were served. It will thus be seen that the delay about which appellants now complain was induced by defendants' own representations that they would make a voluntary adjustment with plaintiff and her assignor. Where the delay in rescinding is induced by the conduct of the offending party it cannot be availed of by him as a defense. (*Promis* v. *Duke,* 208 Cal. 420, 426 [281 Pac. 613]; *Hunt* v. *L. M. Field, Inc.,* 202 Cal. 701, 704 [262 Pac. 730]; *Davis* v. *Butler,* 154 Cal. 623, 628 [98 Pac. 1047]; *Eade* v. *Reich,* 120 Cal. App. 32 [7 Pac. (2d) 1043, 1045]; *Noll* v. *Baida,* 202 Cal. 98 [259 Pac. 433].)

It is admitted that Lowery in selling the stock was acting as agent for appellant J. H. Roth & Company. Appellant J. H. Roth testified that he had authorized J. H. Roth & Company to sell Transcontinental stock belonging to him and that the Transcontinental stock sold to plaintiff and her assignor was a part of this stock. The thinness of Roth's contention that Lowery did not represent him in selling the stock is thus made obvious. J. H. Roth & Company was Roth's agent to sell the stock. The representations of Roth & Company's agent Lowery were the representations of Roth & Company; and the representations of Roth's agent, Roth & Company, were the representations of Roth. A corporation can only act through its agent and if Roth's position was correct an individual could always relieve himself from liability for the fraud of his agent by choosing as his agent a corporation.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.