[Civ. No. 5210. Third Appellate District.—May 18, 1935.]

THE CALISTOGA NATIONAL BANK (a Corporation), Respondent, v. CALISTOGA VINEYARD COMPANY, LTD., et al., Appellants.

King & King for Appellants.

Clarence N. Riggins for Respondent.

THOMPSON, J.—This is an opinion on rehearing. The defendants have appealed from a judgment which was rendered against them in a suit on a promissory note. It is claimed the court erred in refusing to allow the defendants a credit on the note in the amount of $850, which is the aggregate sum of seven alleged forged checks which were paid by the bank and charged against the defendants' account therein. The court found that the seven questioned checks were forged, and that they were charged against the account of the defendants, but precluded them from offering evidence in support of their allegation of an equitable estoppel, and held that an action against the bank, on that account, was barred by the provisions of section 340, subdivision 3, of the Code of Civil Procedure.

The plaintiff is a corporation doing a banking business in Napa County, with its principal place of business at Calistoga. For several years prior to the commencement of this action, the defendants Bianchi and Forni were engaged as an association in operating a vineyard business in Napa County under the name of Calistoga Vineyard Company, Ltd. The evidence indicates that on December 29, 1930, after paying the seven forged checks which are in dispute, the account of the defendants with the plaintiff bank showed a credit of $3,481.55. The bank then held the defendants' promissory note for $4,000, dated March 24, 1930, payable on demand, upon which there was due and remained unpaid in April, 1932, the sum of $1200 and interest at the rate of seven per cent per annum. February 8, 1932, the bank notified the defendants in writing that there was due on their note the sum of $1500 and accumulated interest, and requested their prompt payment thereof. March 2, 1932, the bank again notified the defendants that there was still due on the note the sum of $1500 and accumulated interest, and once more requested their prompt payment of the same. Subsequently the bank charged the defendants' account with the sum of $300 and the accrued interest on the note, crediting the promissory note with that amount. April 25, 1932, the bank notified the defendants to that effect, again urging the prompt payment of the balance due on the note. The defendants received monthly statements of their account from the bank. December 19, 1930, they received a

statement showing a balance to their credit of the sum of $5,360.54. The statement contained a list of thirty-four checks which had been paid and charged to the account during the preceding month. The defendants received another statement of their account on December 31, 1930. It showed a balance of $9,883.66 to their credit. Eighty checks were listed in the last-mentioned statement and charged to their account. The following month another statement was received showing a balance of $3,481.55 to the defendants' credit after charging their account with the payment of thirteen checks. These three statements were introduced in evidence. The bank statements of November and December, 1930, contained seven checks aggregating the sum of $850, which the defendants discovered within a few days thereafter, were forged and cashed from their account by their clerk Bower. The bank was promptly notified of the payment of these forged checks. The defendant Forni testified that he was the only member of the firm authorized to draw checks against their association account; that their stubs contained no evidence of the drawing of these seven checks and that he did not draw them, but that they had been forged. Mr. Harold Bower, who was an accountant in the office of the California Vineyard Company in 1930, testified that he withdrew in the latter months of that year from the defendants' account in the bank the sum of $850 without authorization therefor; that this aggregate sum was represented by several checks ranging in amount from $75 to $200 each. He admitted that he had been previously charged by others with "forgery and peculations". He testified that these seven checks were paid to him at the bank; that they were drawn in the name of the Calistoga Vineyard Company, by either Forni or Bianchi, but he refused to say that he forged or signed their names to the checks. He said in that regard: "I refuse to state under oath whether C. B. Forni actually signed those checks or whether I forged his name on them." Bower was discharged from his employment with the defendants January 5, 1931. Mr. Forni testified that he became aware of the forgeries January 3, 1931. On the following Monday Forni went to the bank and talked with Mr. Westover, the vice-president and cashier thereof, about the payment of the forged checks. This defendant testified that Mr. Westover told him "he would offset the amount of . . . these checks

against the amount on your checks". He later testified that Mr. Westover said "he didn't know just what the bank's attitude would be toward . . . these forged checks"; that Westover then urged him to pay their note, and said "the minute we were ready to take care of this $4,000.00 note, that he would *take the other matter into consideration*". Periodically thereafter until December, 1932, the bank charged the defendants' account with payments of interest due on their promissory note and credited the sums to the note, informing them in writing of each transaction. No objection was ever made to these payments of interest. February 15, 1933, the president of the bank wrote the following letter to the defendants regarding the payment of the note and the forged checks:

"In connection with your loan. At the time you called at my house with regard to this matter about a month ago you advised, on leaving, that you would take the matter up again soon. We have not heard anything further since that time.

"We now insist that this note be taken care of as it is long past due. If there is some adjustment, legally, due you gentlemen on account of that supposed forgery we will take that up as a separate matter and are perfectly willing to consider it in every angle from the legal standpoint. The note, however, was a separate obligation to be paid long ago. . . . "

Mr. Rocca, the president of the bank, first testified that he was present and overheard the conversation between Forni and Westover on the Monday following January 3, 1931. He testified that Westover told him "Forni says that Bower has forged some checks on the Vineyard Company's account". When Rocca asked where the checks were, Forni replied that they seemed to be lost. On rehearing, our attention is called to the fact that the president later testified, "I was not present at the conversation on Jan. 5, 1931, between Mr. Bianchi, Mr. Forni and Mr. Westover." There is no other evidence on this subject. Mr. Westover was not called as a witness at the trial of the case. The evidence is therefore undisputed to the effect that the defendants notified the bank of the forgeries on the last-mentioned date, and that the vice-president then told them either that the bank would "take into consideration" the allowance of credit on the

note of the aggregate sum of the forged checks, or that it would actually credit that amount on the note when it was paid. The subsequent letter of the president, dated February 15, 1933, is not in conflict with the preceding statement of the vice-president with respect to the evidence that until the conference with the president in February, 1933, the defendants were led to believe that it was not necessary for them to commence a suit against the bank to recover the money paid from their account on the forged checks, for they would be taken into account when the note was paid. No date was fixed by the bank for the payment of the note. It did not outlaw until March 24, 1934. This promise of the bank, in effect, was a waiver of the statute of limitations applicable to the statutory time for commencing suit to recover from the bank the sum paid on the forged checks, provided the other necessary elements of an equitable estoppel were also present.

Suit was commenced in April, 1933, on the defendants' promissory note to collect the balance of $1200 and interest which was due thereon. The defendants answered the complaint, admitting the execution of the $4,000 note, and the payment of $2,800 on account thereof, but affirmatively alleged, as a matter of defense, that the bank had wrongfully paid and charged to their account seven forged checks aggregating the sum of $850, and that Mr. Westover, the vice-president, on January 5, 1931, agreed to credit the last-mentioned sum on the defendants' note, but failed to do so; that the defendants, relying on that promise, failed to commence an action against the bank to recover the sum of money paid on the forged checks within the statutory period of time allowed therefor, but that the plaintiff was estopped by its promise and conduct from setting up the statute of limitations on the last-mentioned defense.

The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in which the court held that the seven checks aggregating the sum of $850 were forged and that they were paid by the bank and charged to the account of the defendants therein, but that the defense to the note on that account was barred by the provisions of section 340, subdivision 3, of the Code of Civil Procedure. Judgment was thereupon rendered for the un-

paid portion of the promissory note in the sum of $1200 together with interest thereon from December 8, 1932, at the rate of seven per cent per annum. From this judgment the defendants have appealed.

There is an abundance of evidence to support the finding of the court that the seven checks aggregating the sum of $850 were forged; that they were wrongfully paid by the bank and charged to the account of the defendants, and that the forgeries were promptly called to the attention of the bank.

■ We are of the opinion the defendants did not waive their right to demand reimbursement against the bank for erroneously paying from their account the forged checks by failure to promptly notify the bank of the forgeries immediately upon receipt of their bank statement which included these charges against their account. (Daniel on Negotiable Instruments, 5th ed., p. 387, sec. 1370.) It appears that the defendants did call the attention of the bank to the forgeries and the erroneous payments of those checks within thirty days thereafter, and within a few days after they had discovered the forgeries. The forged checks had then all been paid, and the bank was not harmed by a lack of more prompt notice thereof.

■ The court erred in sustaining objections to the effort on the part of the defendants to prove their affirmative defense of equitable estoppel. As a counterclaim they alleged they were entitled to a credit of $850 on the balance for which they had been sued on their promissory note. It was also alleged that the payment of the forged checks had been promptly called to the attention of the bank and that it waived the provisions of section 340, subdivision 3, of the Code of Civil Procedure, by then agreeing to credit on their note the sum of these forged checks when the note was paid. This pleading properly raised the issue regarding the alleged waiver of the statute of limitations, which the defendants were entitled to prove, if possible, as an offset to the balance of the note which the plaintiff claims was due.

■ The court also erred in finding that the plaintiff did not agree to "take into consideration" the forged checks, when the note was paid. The evidence is uncontradicted to the effect that the bank did promise to do so. This finding is, therefore, not supported by the evidence.

It follows that since the court precluded the defendants from introducing evidence in support of their affirmative defense of equitable estoppel by waiver of the statute of limitations for the commencement of an action to recover the sum of the forged checks which were wrongfully paid by the bank from the defendants' account, the court also erred in finding "That the several counterclaims set out in the answer, and each of them, are barred by the provisions of subdivision 3 of section 340 of the Code of Civil Procedure."

In proof of the affirmative defense of equitable estoppel, it was necessary for the defendants to establish several elements including knowledge on the part of the bank of the wrongful payments of the forged checks, intention on its part to lead the defendants to believe their claim for a credit of the amount of the forged checks on their note would be considered without the necessity of commencing a separate suit to recover that sum, and that the defendants relied upon that promise of the bank. (10 Cal. Jur., p. 626, sec. 14; 2 Pomeroy's Eq. Jur., 4th ed., p. 1643, sec. 805.) The effort on the part of the defendants to prove these facts was erroneously excluded by the court. In effect the defendants claim to have been induced by the promise of the bank to take the forged checks into consideration when their note was paid, to forbear from commencing a separate suit to recover the aggregate sum of those forged checks until after the statute of limitations had run on that separate action. It is a well-established rule of law that when the act or promise of one person causes another in reliance thereon to do or forbear from doing a thing to his detriment, which he would have otherwise performed, the promisor is estopped from taking advantage of the act or omission of the promisee. The violation of such a promise amounts to fraud and estops the promisor from repudiating the agreement on the doctrine of equitable estoppel. In the case of *Quanchi* v. *Ben Lomond Wine Co.*, 17 Cal. App. 565 [120 Pac. 427], the text in 1 Wood on Limitations, second edition, section 76, is quoted with approval, as follows:

"While a promise not to plead the statute, whether made before or after the debt is barred, does not amount to an acknowledgment thereof or a promise to pay it, yet if made before the debt is barred and in consideration of the forbearance to sue and the creditor does forbear to sue upon the

faith of the promise, it is binding upon the debtor, and at least has the effect to keep the debt on foot until the statutory period from such promise expired . . . by way of estoppel.''

Nor is it necessary that the promisor shall sign a written agreement to waive the statute of limitations to bar him from subsequently repudiating his agreement. (*Smith* v. *Lawrence*, 38 Cal. 24 [99 Am. Dec. 344].) The authorities are uniform to the effect that the conduct of a promisor, or even his silence under certain circumstances may result in an equitable estoppel. (Sec. 1962, subd. 3, Code Civ. Proc.; *Verdugo Cañon Water Co.* v. *Verdugo*, 152 Cal. 655 [93 Pac. 1021].) In the last-cited case it is said:

''An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. . . . An estoppel may arise from silence as well as words.''

In 2 Pomeroy's Equity Jurisprudence, fourth edition, page 1669, section 812, it is said in that regard:

''Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, acts or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that, so relying upon it and induced by it, he should take some action. The cases all agree that there can be no estoppel, unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action. Finally, this action must be of such a nature that it would have altered the legal position of the party for the worse, unless the estoppel is enforced. He must have placed himself in such a situation that he would suffer a loss as the consequence of his action, if the other party were allowed to deny the truth of his representation, or repudiate the effects of his conduct. Although this action is usually affirmative, yet such affirmative action is not indispensable. *It is enough if the party has been induced to refrain from using such means of taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.*''

The very gist of the defendants' plea of equitable estoppel was to show that they relied on the plaintiff's promise

to take in consideration the allowance of the forged checks as a credit on their note when it was paid, and relying on that promise, that they failed to commence a separate action to recover the amount of those checks within the time allowed by the statute of limitations. This evidence they sought to prove, but were prevented from doing so by the erroneous ruling of the court.

While it is true that the evidence is uncontradicted to the effect that the plaintiff's agent agreed to either allow the defendants' claim based on the forged checks as a credit on their note, or take the payment of those checks in consideration when the note was paid, the evidence of other necessary elements of equitable estoppel was excluded, and this court is therefore without proof upon which it may be permitted to deduct from the balance found by the court to be due on the promissory note, the amount of the forged checks which were paid by the bank from the defendants' account.

For the reason that the court erred in the adoption of its findings, and in excluding evidence respecting the affirmative defense of equitable estoppel, as above stated, the judgment is reversed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 17, 1935, and the following opinion then rendered thereon:

THE COURT.—The opinion specifically states that the defendants notified the bank of the forged checks on Monday following January 3, 1931, and that these forged checks were contained in the statements of November and December, 1930, which were furnished to the defendants. There is therefore no substantial merit in the respondent's criticism of the court's statement of facts.

The petition for rehearing is therefore denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1935.