[S. F. No. 17093. In Bank. May 18, 1945.]

JEAN LAUGHLIN BENNER, Petitioner, v. INDUSTRIAL
ACCIDENT COMMISSION et al., Respondents.

Melvin M. Belli and Anthony J. Wiechers for Petitioner.

Everett A. Corten, Dan Murphy, Jr., and W. N. Mullen
for Respondents.

SHENK, J.—This is a proceeding to review an order of
the Industrial Accident Commission denying compensation
for injuries sustained by the petitioner in the course of her
employment as a nurse in St. Luke's Hospital. The commis-
sion found that petitioner, while employed as a nurse from
September 4, 1942, to and including March 15, 1943, sustained
an injury arising out of and in the course of her employment
when she contracted an occupational pulmonary tuberculosis,
and further found that petitioner had knowledge of her con-
dition on May 11, 1943. The application for adjustment of

claim was filed on November 16, 1943, which was five days after the lapse of six months from the date, as found by the commission, of the concurrence of compensability and knowledge of the industrial injury. The commission therefore concluded that the application was barred by the statute of limitations.

The existence and nature of the injury, and the fact that it was suffered in the course of and arose out of the employment are not in dispute. Controversial matters concern the date on which petitioner had knowledge that her condition was compensable tuberculosis, and, if such knowledge was acquired more than six months prior to the filing of the application, whether respondents were estopped from setting up the defense of the statute of limitations under the circumstances here disclosed.

The facts surrounding the making of the claim are as follows: Petitioner, a nurse, was employed at St. Luke's Hospital from September 4, 1942, to March 15, 1943. In November, 1942, she was subjected to a tuberculin test which resulted in a negative reaction. On March 10, 1943, an X-ray examination was made of her chest and the doctor making the examination diagnosed her condition as ''minimal tuberculosis.'' On March 12, 1943, petitioner entered a hospital for care and treatment and was placed in a tuberculosis ward. The husband of petitioner was an interne. On several occasions he made sputum tests which were negative. He testified that on June 3, 1943, tests were made which for the first time showed a positive reaction, and at that time petitioner first knew that she had contracted tuberculosis. He said that prior to that time the diagnosis was probable tuberculosis, which prompted him to write a letter to the superintendent of St. Luke's Hospital. That letter was dated May 11, 1943, and set forth the claim that the tuberculosis was industrially caused and compensable. The commission took the date of May 11, 1943, as the date when petitioner had knowledge of the culmination of the injury and as the basis for its conclusion that the claim was barred.

Petitioner contends that the knowledge of culmination of the injury was not acquired until the date when the result of the test of June 3d was known, which her husband stated was June 8th.

The finding of the commission that compensability and

knowledge of the industrial injury concurred on May 11, 1943, is a finding of fact, and under the rules governing these proceedings may not be disturbed if supported by substantial evidence. Taking into consideration the fact that petitioner was a trained nurse and her husband an interne, the commission drew the inference that knowledge of the injury and of its compensable character was available to them at a time prior to the positive tests now relied upon by petitioner as fixing the time of knowledge. It may be assumed that the inference so drawn was a permissible one under all of the circumstances of the case, especially when the date of the letter to the employer is considered.

Petitioner contends, however, that even if the date of knowledge of the injury was more than six months prior to the filing of the application the evidence before the commission was such that the employer was estopped from setting up the statute of limitations as a defense. In support of this contention petitioner relies upon the following: On May 11, 1943, as above stated, the husband of petitioner advised the employer by letter of the disability of his wife. On May 17th the superintendent of the hospital replied by letter requesting information concerning the alleged contracting of the disease during the period of employment and inquiring whether there was definite evidence that the petitioner had tuberculosis and not a virus disease simulating tuberculosis, and as to what tests had been made. The tests of June 3d were made in response to that letter, and the positive result of the test was obtained on June 8th and was communicated to the employer. On August 3d the superintendent of the hospital wrote to petitioner's husband expressing a preference to settle the matter, advised him that Dr. Hill, chief of the hospital's medical service, was the man on whom they relied for advice and consultation with its insurance carrier, that Dr. Hill was on vacation for about a month, and gave the name and address of the insurance carrier. The husband thereafter had telephone conversations with the superintendent but was told that Dr. Hill was still away. In the early part of September he again communicated with the superintendent and with the insurance carrier, at which time the representative of the insurance company told him they would have to have more investigation before their portfolio on the case would be complete, requested him to return at the end of his vacation and stated that in the meantime someone from the company or the hospital would

investigate the case and interview his wife. He waited for Dr. Hill to return and visit petitioner. He testified that he "let the case ride for a while" because they had requested time in which to investigate, and that the employer had asked him to wait until Dr. Hill had seen the patient. Neither Dr. Hill nor any other representative of the employer called on the petitioner or examined her prior to filing the application for adjustment. In the latter part of September the representative of the insurance carrier asked for "more time" in which to investigate the case. Apparently, the final decision of the employer or its insurance carrier was not communicated to the petitioner. Only when her husband, as he testified, saw that they were "not getting to first base," was the application filed with the Industrial Accident Commission. The commission made no finding on the issue of estoppel and was apparently of the opinion that the lapse of five days beyond the statutory period precluded it from deciding favorably to the petitioner. But the commission had a right to consider the evidence which was favorable to the petitioner on the issue of estoppel. In fact such evidence was without substantial conflict both as to the conduct of the hospital authorities and of the representative of the insurance company.

In *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323], this court applied the doctrine of estoppel where the conduct of the party against whom the claim could be filed was such as to induce the claimant to delay the filing until after the expiration of the time limitation. Here, the repeated requests by the employer and the representative of the insurance carrier for "more time" to complete their medical investigation constituted conduct on which the claimant had a right to rely and which should operate as an estoppel to the plea of the statute of limitations. Where, as here, the delay in commencing action was induced by the conduct of the party sought to be charged the latter may not invoke such conduct to defeat recovery. (*Laraway* v. *First Nat. Bank of LaVerne*, 39 Cal.App.2d 718, 730 [104 P.2d 95]; *Mitchell* v. *J. H. Roth & Co.*, 124 Cal.App. 96, 99 [12 P.2d 91].) ▮ An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. (*Verdugo Cañon Water Co.* v. *Verdugo*, 152 Cal. 655, 683 [93 P. 1021].)

▮ To create an equitable estoppel, "it is enough if the party has been induced to *refrain* from using such means or

taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." (3 Pomeroy Eq. Jur. (5th ed.) § 812, p. 233.) In *Adams* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 487 [116 P.2d 75], it was said at page 488: "It is well settled that a person by his conduct may be estopped to rely upon these defenses. (*Rapp* v. *Rapp*, 218 Cal. 505, 509 [24 P.2d 161]; *Calistoga Nat. Bank* v. *Calistoga Vineyard Co.*, 7 Cal.App.2d 65, 72 [46 P.2d 246]; 16 Cal.Jur. 575; 130 A.L.R. 8.) ▮ Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense. (*Rapp* v. *Rapp*, *supra*; *Miles* v. *Bank of America N. T. & S. Assn.*, 17 Cal. App.2d 389, 398 [62 P.2d 177].) . . ."

It follows that the employer and its insurance carrier cannot escape the consequences of their acts or conduct affirmatively engaged in to procure delay for purposes of settlement, or investigation or otherwise, upon which the employee has relied and by which he has been induced to delay the filing of a claim until after the expiration of the statutory period. Such conduct, so relied upon, becomes the basis of an estoppel against the party responsible for the delay and should, under the facts here presented, preclude the bar of the statute of limitations.

The order is annulled with directions to the commission to proceed in accordance with the foregoing views.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

EDMONDS, J.—I cannot agree that the record in the present case justifies only a determination that because of the acts of the employer, the insurance carrier is estopped from relying upon the defense of the statute of limitations. On the contrary, the evidence substantially supports the order of the Industrial Accident Commission denying the petitioner compensation upon the ground that her claim is barred.

The commission's conclusion that Mrs. Benner acquired knowledge of the compensable nature of her injury prior to six months before she applied for benefits is supported by the evidence, my associates agree. And although, according to fundamental principles, findings supported by substantial evidence may not be disturbed upon certiorari, Mr. Justice Shenk, to avoid the application of this rule, ignores those portions of

the record which abundantly justify the implied finding of the commission that the insurance carrier was not estopped to rely upon the statutory bar. There was no finding upon this issue, he suggests in effect, because the commission considered itself precluded by law from making such a determination. In my opinion, both the law and the facts compel a decision against the petitioner.

First, the express finding that the petitioner's claim was barred by the statute of limitations includes the subordinate finding that the essential features of an estoppel were lacking. The implied finding "results by necessary implication" (*Valencia* v. *Shell Oil Co.*, 23 Cal.2d 840, 846 [147 P.2d 558]). Moreover, the finding of the ultimate fact that the petitioner's claim was barred by the statute of limitations supports the award, and it was not necessary for the commission to make a negative finding upon the fact of estoppel. (See 24 Cal.Jur. 974, and cases there cited.)

In the second place, the record does not disclose that the commission considered itself precluded from considering the petitioner's evidence purporting to show an estoppel; on the contrary, it clearly appears, the commission was fully aware that the petitioner relied upon the doctrine. But there was no finding in her favor upon this issue because the evidence persuasively led to the conclusion that the essential features for an estoppel were lacking. Mrs. Benner unsuccessfully petitioned the commission for a rehearing, substantially upon the ground that the insurance carrier was estopped to rely upon the statutory bar, and the determination against her is vigorously defended in the present proceeding. In support of its decision the commission points to facts making clear that the application was filed more than six months after the injury. And considering the petitioner's contention that the insurer is estopped from setting up the defense of the statute of limitations because, when informed of the claim, it did not expressly deny liability but stated it would have to investigate the claim before any decision could be made on it, the commission says: "Rather than a promise to pay, this action on the part of the insurance company should have indicated to the applicant that it would not pay unless it had to. On the evidence, therefore, and on the defense being pleaded by the insurance company, the Commission was compelled to hold the claim barred by the statute of limitations."

Under these circumstances the question now presented for decision is whether the evidence supports the implied finding that the insurance carrier was not estopped to rely upon the defense of the statute of limitations. As I read the record upon that issue, the testimony and the correspondence afford ample support for a conclusion that during the period allowed for claiming compensation, the hospital considered its duty to Mrs. Benner fulfilled by reporting her demand to its insurance carrier and the insurer refused to admit any liability upon it. Certainly, the evidence does not compel a determination that, as a matter of law, only a finding favorable to the petitioner reasonably may be drawn from it concerning the plea of estoppel although it supports the commission's decision as to the untimely filing of the claim.

From May 11, 1943, the petitioner must be presumed to have known that the period of limitation was running. But no steps were taken either by her or her husband to avoid the consequence of its operation; they merely "let the case ride." Although it appears that the husband was endeavoring to settle the claim, there is no evidence of designed fraud or any attempt by the hospital or its insurer to lull the petitioner into a false sense of security. Nor does it appear that the employer or the insurer either expressly waived the tolling of the statute, or in any way requested the petitioner to refrain from legal action and rely entirely upon negotiations. In apparent good faith they merely asked for time within which to investigate the petitioner's claim, and there is no evidence from which it may be inferred that either the employer or the insurance carrier intentionally delayed an investigation of the circumstances relating to the illness.

In the latest of the cases relied upon by Mr. Justice Shenk to support his conclusions, the court considered a complaint which included allegations in much detail charging express representations upon the part of the defendants to the effect that delay in filing suit would not prejudice the plaintiffs' rights. About a month after the accident occurred, the pleading related, at a time when the injured woman was "in great pain and under opiates," an agent of the defendants who had called upon her to negotiate a settlement of her and her husband's cause of action, was informed "that she was not then in condition to discuss the matter of the extent of her damages and desired to recover her health before determining and

specifying the extent of plaintiffs' damages; that defendants, through their said agent, then and there represented that it would be satisfactory to defendants for plaintiffs to so do; . . . Plaintiffs believed the said representations . . . and relied thereon and by reason thereof did not for several months . . . [thereafter] employ an attorney . . . and did not take any steps or proceedings whatsoever relating thereto." (*Farrell* v. *County of Placer*, 23 Cal.2d 624, 627 [145 P.2d 570, 153 A.L.R. 323].)

The decision in *Adams* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 487 [116 P.2d 75], was also based upon express representations of the defendant inducing delay in bringing suit. "There is uncontradicted evidence in the record," said this court, "that the office of the defendant Building and Loan Commissioner continuously indicated and represented, verbally and in writing, that the decision in the Martin case, which was first instituted and in which pursuant to agreement with him the issues were so framed as to cover the several types of investment here involved, should be determinative of the rights of all persons or groups similarly situated; and that it was in reliance on such representations that these suits were not earlier instituted." (P. 488.)

As authority for applying the doctrine of estoppel in the present case, Mr. Justice Shenk cites *Verdugo Cañon Water Co.* v. *Verdugo*, 152 Cal. 655 [93 P. 1021], in which the following from *Thompson* v. *Simpson*, 128 N.Y. 270, 289 [28 N.E. 627, 632], is quoted with approval: " 'An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped.' " But that statement was made in considering facts very different from those now before the court. In passing upon the plea of the statute of limitations invoked by the plaintiffs, this court declared that, "One who is embarking with others in a common enterprise to use common property for the common benefit, at common expense, owes to the others the duty, if he proposes or intends to reserve a part of the benefit to himself exclusively, to inform the others fully in regard to it. If he does not, he will be estopped to assert his claim after the others have incurred the expense" (p. 682). There then follows the language quoted by Mr. Justice Shenk, which is lifted from its context in a discussion of the rule that in cases where there is a *duty to speak* an estoppel may arise from silence as well as words; but the evidence

then being considered, said the court, disclosed no basis for applying the doctrine. Certainly, there is no duty on the part of either an employer or an insurance carrier to procure the timely filing of a claim for compensation.

In further discussion of another phase of the doctrine of estoppel, the court followed reasoning which also fully justifies the denial of compensation now being challenged by Mrs. Benner. It said: ''The facts stated are not sufficient to create estoppels against the plaintiffs. It does not appear that either Verdugo or Ross was induced to put down his well by any act, word, or tacit encouragement of the plaintiffs, or either of them, or relied upon their silence as evidence of his own right, or of their consent. Nor does it appear that plaintiffs intended that either should act in reliance upon their silence, or expected that either would do so. It is not shown that plaintiffs were under any duty toward either to disclose any claim they might have to the water, nor that said defendants did not know, at least as well as the plaintiffs knew, that the pumping of the respective wells would decrease the west-side stream, and the underflow at the dam. The party estopped must always intend, or at least must be so situated that he should be held to have expected, that the other party shall act, and the other party must, by the words, conduct or silence of the first party, be induced or led to do what he would not otherwise do. [Citations.] The mere fact that the defendants expended money in sinking the wells and putting in the pumps each upon his own land, with the knowledge of the plaintiffs and without objection by them, creates no estoppel. [Citations.]'' (Pp. 673-674.)

In the case of *Laraway* v. *First Nat. Bank of La Verne,* 39 Cal.App.2d 718 [104 P.2d 95], the continued representations of the defendant concerning the probabilities of realizing upon bonds sold to the plaintiff were said to have ''created an equitable estoppel, for it is the rule that when a defendant electing to set up the statute of limitations has previously by deception or any violation of duty toward the plaintiff caused the latter to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the courts will not allow him to hold.'' (P. 729.) And a bank's promise, made both orally and in writing over a considerable length of time, to repurchase securities which it sold to the plaintiff, together with assurances that if he

would be patient and wait and not "to start anything by going to any attorneys" the bank would carry out its agreement, were also held to estop the promisor from taking advantage of the statute of limitations. (*Miles* v. *Bank of America,* 17 Cal.App.2d 389, 397 [62 P.2d 177].) To the same effect is *Calistoga Nat. Bk.* v. *Calistoga V. Co.,* 7 Cal.App.2d 65 [46 P.2d 246], in which the aggrieved party was precluded from introducing evidence tending to show that he failed to commence action in direct reliance upon a promise of adjustment of his claim. The court concluded that the evidence should have been received as tending to prove facts justifying a finding of estoppel. Again, in the case of *Mitchell* v. *J. H. Roth & Co.,* 124 Cal.App. 96 [12 P.2d 91], the delay was induced by the defendants' representations that they would make a voluntary adjustment.

The representations made by the defendants in each of the cited cases go much further than those of the hospital and the insurer in the present case. Here we have nothing except the statement that more time was necessary in which to complete the investigation of the petitioner's claim. The most that could be said for this evidence is that it would support a finding in favor of Mrs. Benner upon the ground that considering all the circumstances of her illness, she reasonably might have delayed filing her claim because of what was said to her husband concerning the progress of the investigation. But the commission reached the opposite conclusion, fully justified according to the decisions relied upon by Mr. Justice Shenk, and there is no basis whatever, in my opinion, for holding that the evidence compels the contrary finding as a matter of law.

Mr. Justice Shenk attempts to bring the present controversy within the rule of the cases upon which he relies to the effect that a party is estopped to assert the bar of the statute of limitations where he misled the other party by offering a voluntary settlement. He says that, "On August 3rd the superintendent of the hospital wrote to petitioner's husband expressing a preference to settle the matter." The statement is based upon a letter written by Dr. Johnson which, in my opinion, does not justify that summarization. The letter reads: "I am very sorry that I have not written you personally since June 29, when I received a letter from you in reply to mine of May 17. In these times, when Staff Officers are away and with the necessity for my taking a vacation for my health,

it is quite easy to understand that many things are not attended to as promptly as we might wish. However, there is very little to do in this instance other than report the facts to our insurance carrier where, as a matter of fact, the case must be handled with their consent and at their direction.

"From the personal side, however, I wish we could settle the matter between us to your satisfaction, as I realize your concern over the present situation and future welfare of your wife.

"Dr. H. P. Hill is Chief of our Medical Service and the one on whom we shall rely for advice and consultation with our insurance carrier. We expect Doctor Hill back on duty in perhaps another month. Our insurance carrier is the Pacific Employers' Insurance Company and our insurance broker, Johnson and Higgins, 311 California Street, in case you wish to communicate with either of them." By this letter Dr. Johnson told Dr. Benner that, although he personally would like to see the petitioner compensated, the matter was out of his hands and entirely within the discretion of the insurance carrier; quite certainly, this conclusion reasonably may be drawn from it.

Of some significance in this regard is the fact that at a later time Dr. Benner called on John M. Davis, claims examiner of the Pacific Employers Insurance Company. According to Dr. Benner, Davis told him that "he really couldn't tell anything about the merits of the case because he would have to go back and see how past cases had been handled, and he would have to investigate the case from the medical aspect and that St. Luke's would send a medical man to investigate the case and he asked me for time." A short time later Dr. Benner left on a vacation and, as he testified, he did not return because he knew no medical men had examined his wife. "Did anybody at St. Luke's, or anybody representing it, or the Pacific Employers Insurance Company, or anyone representing it, ever agree to pay your wife compensation or furnish her with medical treatment," counsel asked Dr. Benner. His reply was in the negative. To the question: "Dr. Johnson never promised to you to see that your wife was paid compensation or given medical treatment?", he answered, "That's correct." To the further question, "What did the doctor ever say to you or your wife about any promise or agreement?", the witness stated, "He made no promise." Coun-

sel continued: "And he told you, did he not, in the very beginning, that there would have to be some investigation?" Dr. Benner's answer was: "That's correct."

Mr. Davis testified that Dr. Benner came to see him "on one occasion" to discuss his wife's case; Dr. Benner then told him he was going on a vacation and would drop in two or three weeks later, but he never returned. The witness did not remember having any discussion with Dr. Benner concerning an investigation to be made by him or his company.

The petitioner's testimony is in accord with that of her husband. She was asked: "Did you ask anyone in charge of St. Luke's Hospital or the Pacific Employers Insurance Company to pay you any compensation due to your tuberculosis?" "Did you ever ask either of them to pay you compensation?" "Have either one of them promised to pay you compensation because of such condition?" To each of these questions her reply was, "No."

If, as Mr. Justice Shenk suggests, the commission considered itself precluded from making a finding upon the evidence claimed to show an estoppel, and if, as is implicit from his opinion, there is no implied finding upon the issue, the award should be annulled with directions to make a determination in that regard. Clearly, however, the cases cited by Mr. Justice Shenk are not authority for the proposition that the evidence in the present case, as a matter of law, compels a finding upon the issue of estoppel in favor of the petitioner. The determination of the commission rests upon inferences reasonably to be drawn from it and for that reason should be affirmed.

Spence, J., concurred.

Respondent Pacific Employers Insurance Company's petition for a rehearing was denied June 14, 1945. Edmonds, J., and Spence, J., voted for a rehearing.